NEWMAN, Circuit Judge,
dissenting.
The jury verdict was that Frank T. Shum is the joint inventor, and thus owner in common, of five of the six patents presented to the jury. The jury was deadlocked as to the award of damages on the counts that related to issues of fraud, misrepresentation, unjust enrichment, and breach of fiduciary duty. The district court entered judgment as to Shum’s joint inventorship, and granted judgment as a matter of law as to all of the deadlocked counts. It cannot be said that no reasonable jury could have found any of the liability issues in favor of Shum, for some jurors did find in his favor, although not unanimously. It is relevant that the jury had already found unanimously in favor of Shum as to joint inventorship, which was the foundation of the issues related to damages. In these circumstances, it was improper for the district court, and now this court, to make their own findings of disputed material fact on traditional jury questions. That a jury is deadlocked does not convert fact into law, and the constitutional right is not negated when the jury is deadlocked. See Union Pac. R.R. Co. v. Bridal Veil Lumber Co., 219 F.2d 825, 832 (9th Cir.1955) (“To do other than send the case back for a new trial when a decision on a vital issue by the jury is missing would deprive the parties of the jury trial to which they are entitled constitutionally.”). From my colleagues’ endorsement of and participation in this improper procedure, I respectfully dissent.
A
The pretrial summary judgments
Before the jury trial, and thus before the verdict of joint inventorship, the district court granted summary judgments as to the counts of breach of fiduciary duties and fraudulent concealment.

Breach of Fiduciary Duties

This summary judgment was predicated on the duties that Verdiell owed to Radiance and to Shum, who was the only other owner of Radiance. Shum’s position was that Verdiell violated his fiduciary duties when he appropriated Shum’s inventions as his own and patented their joint technology as his sole and exclusive property. Shum points out that Verdiell filed his first patent application, in his sole name, one day after the Plan of Liquidation of Radiance was executed. The district court *1085 held, on summary judgment, that there was no fiduciary obligation as a matter of law, citing Persson v. Smart Inventions, Inc., 125 Cal.App.4th 1141, 23 Cal.Rptr.3d 335 (2005).
The ruling in Persson was misapplied. Persson involved two equal shareholders who parted ways, and then one went on to exploit an opportunity he had not revealed when he bought out the other. The court ruled that no fiduciary duties were owed. Id. at 1156-59, 23 Cal.Rptr.3d 335. Shum argues that there is a significant factual difference, for Verdiell didn’t simply exploit an opportunity on which he had remained silent, but did so by patenting Shum’s inventions as his own. The district court held that Verdiell’s activities were permitted by the Plan of Liquidation, which gave both him and Shum the right to use the Radiance technology.
Shum argues that the Plan of Liquidation did not authorize Verdiell to appropriate the sole and exclusive right to Shum’s inventions. Shum states that under California law, former officers of a company continue to owe duties of fair dealing, citing ViChip Corp. v. Lee, 438 F.Supp.2d 1087, 1100 (N.D.Cal.2006) (duty violated when an officer who had been asked to step down destroyed certain documents), and Fox v. Abrams, 163 Cal.App.3d 610, 617, 210 Cal.Rptr. 260 (1985) (recognizing post-dissolution fiduciary obligations). Shum stresses that Verdiell’s breaching conduct was not that he continued the Radiance business, but that he patented Shum’s inventive contributions as his sole invention and exclusive property.
Breach of fiduciary duty is a question of fact. See City of Hope Nat’l Med. Ctr. v. Genentech, Inc., 43 Cal.4th 375, 391, 75 Cal.Rptr.3d 333, 181 P.3d 142 (2008) (the existence of a fiduciary duty depends on the facts and circumstances of each case). Summary judgment of disputed factual questions is proper only if the evidence, construed in the light most favorable to the non-movant, nonetheless requires that the movant must prevail. Ybarra v. Reno Thunderbird Mobile Home Vill., 723 F.2d 675, 677 (9th Cir.1984); see also, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (on motion for summary judgment “the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor”). This summary judgment motion was decided before the jury had found that Shum was a joint inventor, a finding material to this aspect of fiduciary duty. A reasonable jury could have found this issue in favor of Shum; thus summary judgment was improperly granted, and is incorrectly sustained by the panel majority.

Fraudulent Concealment

The district court also granted summary judgment that there was no fraudulent concealment, again before the jury found the joint inventorship of these five patents on the Radiance technology, and even though the question of inventorship was at the core of the asserted fraudulent concealment.
Under California law, fraudulent concealment requires “the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact.” Cal. Civ.Code § 1710(3). Shum’s fraudulent concealment claim focused on Verdiell’s concealment of Shum’s inventive contributions and thereby patenting of the joint technology as Verdiell’s exclusive property. The Plan of Liquidation cannot be construed as intending to authorize Verdiell to curtail Shum’s equal rights in the Radiance technology, by falsely claiming exclusive patent rights in the technology. Disputed factual questions could not be resolved adversely to *1086 Shum on summary judgment, by the district court and this court. See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (on motion for summary judgment the court must view the facts in the light most favorable to the non-moving party and give it the benefit of all reasonable inferences to be drawn from those facts).
B
The deadlock at trial
The jury was unable to reach a verdict on the questions of liability and damages. The district court then granted judgment as a matter of law on all of the issues of liability and damages. Shum states that he is entitled to a new trial on these issues, and points out that he was denied discovery on some aspects on which the district court later criticized the absence of evidence.
Shum presented several theories of liability, as were discussed by the district court in its grant of JMOL.

Unjust Enrichment

Under California law, unjust enrichment requires unjust receipt of a benefit and its wrongful retention. Peterson v. Cellco P’ship, 164 Cal.App.4th 1583, 1593, 80 Cal.Rptr.3d 316 (2008); Lectrodryer v. Seoulbank, 77 Cal.App.4th 723, 726, 91 Cal.Rptr.2d 881 (2000) (confirming right to jury trial on unjust enrichment claim). After the jury deadlocked, the district court decided this issue adversely to Shum “as a matter of law.”
Shum states that there was substantial evidence whereby a reasonable jury could have found that Verdiell was unjustly enriched based on Verdiell’s false claims of sole inventorship. Shum points to Verdiell’s assertions of exclusive patent rights, starting with the patent applications where Verdiell declared his sole inventorship when filing the applications, followed by Verdiell’s representations on assigning the patent applications to LightLogic in which he averred that “[ajssignor is the sole and lawful owner of the entire right, title, and interest in and to said inventions.” Light-Logic in turn described itself as the “sole and exclusive owner” of these patents, and duly assigned this purported entire and exclusive right to Intel. Shum also pointed to other acquisition documents that referred to LightLogic’s ownership, proprietary products, and patented technology.
A reasonable jury could have found that Verdiell obtained and retained an unjust benefit from these misrepresentations. See County of Solano v. Vallejo Redev. Agency, 75 Cal.App.4th 1262, 1278, 90 Cal.Rptr.2d 41 (1999) (the term “benefit” for unjust enrichment “denotes any form of advantage”). My colleagues on this panel hold that Shum was required to prove that “the promise of exclusive rights is what lured Intel to the bargaining table and ultimately caused it to purchase LightLogic.” Maj. Op. at 1080. That is incorrect; Shum need not prove that but for the falsehood there would have been no transaction at all. My colleagues’ argument that “there is no mention that the sale was contingent on Verdiell and LightLogic having exclusive rights” does not control whether Verdiell and LightLogic were unjustly enriched by the misrepresentations of exclusivity. Shum points to the trial court’s statement, in colloquy with counsel, that for the defendants to argue that Intel did not value the patent ownership would be “crazy.” Transcript of Proceedings held on December 1, 2008 at 2193 ln.18, Shum v. Intel Corp., 630 F.Supp.2d 1063, (N.D.Cal.2009).
The district court, and now my colleagues, err in deciding the question of unjust enrichment adversely to Shum “as a *1087 matter of law.” The question of whether these patents were of value in the transaction is factual, and was deemed material by both the district court and my colleagues; however, Intel declined to produce, and the district court refused to compel, Intel documents potentially relevant to this question. A reasonable jury could have found that patent exclusivity was valued, and that Verdiell and LightLogic were unjustly enriched. When the jury could not reach a verdict, the appropriate step was a new trial. See Wahpeton Canvas Co. v. Frontier, Inc., 870 F.2d 1546, 1555 (Fed.Cir.1989) (vacating judgment and remanding for a new trial where the jury did not return answers on vital issues).

Breach of Contract

Shum argues that Verdiell breached the Plan of Liquidation, and its implied duty of good faith and fair dealing between contracting parties, by obtaining exclusive rights to the Radiance technology in which Shum was intended to have equal rights. The district court held that “as a matter of law” there could be no breach of contract unless the false inventorship claims were made with deceptive intent. That is not the law. It is hornbook law that a contract may be breached whether or not there was deceptive intent. See New York Life Ins. Co. v. Viglas, 297 U.S. 672, 678, 56 S.Ct. 615, 80 L.Ed. 971 (1936); Trauma Service Group v. U.S., 104 F.3d 1321, 1325 (Fed.Cir.1997) (“a breach of contract is a failure to perform a contractual duty when it is due”).
My colleagues reason that there was no breach because Shum did not “suffer[] financial harm by being omitted from the patents as a co-inventor.” Maj. Op. at 1082. That too is not the law of contracts. See Restatement 2d of Contracts § 235(2) (1981) (“When performance of a duty under a contract is due any non-performance is a breach.”); 11-55 Corbin on Contracts § 55.10 (2010) (“a breach of contract that causes no injury is still a wrong to the other contracting party”); 23 Williston on Contracts § 63:1 (4th ed. 2010) (“a breach of contract is a failure, without legal excuse, to perform any promise that forms the whole or part of a contract”). The availability or nature of remedy does not decide whether the contract was breached. Restatement, supra, at § 236, cmt. a (“Even if the injured party sustains no pecuniary loss or is unable to show such loss with sufficient certainty, he has at least a claim for nominal damages.”).
Shum argues that while the Plan of Liquidation authorized both Shum and Verdiell to use the Radiance technology, the filing of patents by which Verdiell exclusively appropriated the Radiance technology was a breach of the Plan. A reasonable jury could have so found. On deadlock of the jury, it was improper for the district court, and again for this court on appeal, to decide these disputed factual questions “as a matter of law.” See Cal. v. Altus Fin. S.A., 540 F.3d 992, 1008-09 (9th Cir.2008) (remanding for a new trial where the jury deadlocked on vital issues).

Conclusion

The jury was presented with a complex of legal theories derived from the California Civil Code, not all of which are here discussed. The district court inappropriately terminated the proceedings “as a matter of law,” for there was sufficient evidence on which a jury could have found in favor of Shum on one or more liability theories. Shum is entitled to a retrial. From my colleagues’ improper elimination of this constitutional right, I respectfully dissent.